```
Approved:  _____
           KAYLAN E. LASKY
           Assistant United States Attorney

Before:    HONORABLE DEBRA FREEMAN
           United States Magistrate Judge
           Southern District of New York
```

```
------------------------------------X
                                    :
UNITED STATES OF AMERICA            :   SEALED COMPLAINT
                                    :
                                    :   Violations of 18 U.S.C.
           -v.-                      :   §§ 922(a)(1)(A),
                                    :   924(a)(1)(D), and 2.
RICHARD HALL,                       :
     a/k/a "Richard Banko,"         :   COUNTY OF OFFENSE:
                                    :   BRONX
                     Defendant.      :
------------------------------------X
```

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOANNA R. BECK, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and charges as follows:

## COUNT ONE
### (Firearms Trafficking)

1. From at least in or about January 2020 up to and including at least in or about February 2020, in the Southern District of New York and elsewhere, RICHARD HALL, a/k/a "Richard Banko," the defendant, not being a licensed importer, licensed manufacturer, and licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully and knowingly engage in the business of dealing in firearms and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, and travel interstate, to wit, HALL illegally obtained firearms from outside of New York for resale in the Bronx, New York.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

2. I have been involved in the investigation of this matter, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my participation in this investigation, I am aware that since in or about January 2020, ATF has been investigating firearms trafficking involving RICHARD HALL, a/k/a "Richard Banko," the defendant, including through two controlled purchases of firearms involving another individual ("Individual-1")[1], as described below.

## January 9, 2020 Firearm Purchase

4. Based on my participation in this investigation and my review of materials obtained from Facebook pursuant to a judicially-authorized search warrant for the Facebook account of RICHARD HALL, a/k/a "Richard Banko," the defendant ("HALL's Facebook Account")[2], I have learned the following, in substance and in part:

    a. On or about January 3, 2020, Individual-1[3] sent HALL a Facebook message asking, in substance and in part, "What you got

---

[1] Starting in approximately January 2020, Individual-1 was cooperating with ATF in exchange for monetary compensation. In or about April or May 2020, ATF "deactivated" Individual-1, meaning that ATF stopped using Individual-1 as a confidential informant, after learning that Individual-1 had been arrested. The information that Individual-1 provided prior to Individual-1's deactivation has proven to be reliable and has been corroborated through other investigative steps, including law-enforcement surveillance of Individual-1 surrounding the firearms transactions described herein. In light of Individual-1's deactivation by ATF, the Complaint does not rely on information provided by Individual-1.

[2] Based on my review of records obtained from Facebook and conversations with law enforcement officers who observed HALL during the January 9, 2020 controlled buy described herein, I know that the profile photo for Hall's Facebook Account depicts HALL, and the account "Name" includes HALL's first name, with a registered email address that includes HALL's first and last names.

[3] Based on my review of Individual-1's Facebook account on Individual-1's phone during the events described herein prior to Individual-1's deactivation, I am aware that Individual-1's Facebook account is used by

2

for the low I need a pocket jawn," to which HALL responded, "Lowest I got is a 380 for 7." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, a "pocket jawn" refers to a firearm, "for the low" refers to a low price, "380" is a .380 caliber firearm, and "7" refers to $700.

      b.    On or about January 6, 2020, HALL sent Individual-1 a Facebook message stating, in substance and in part, "If there's any available buses tonight that I can make I'll try for it but if not the day after." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, HALL was planning to take a bus to New York from out of state.

      c.    On or about January 8, 2020, HALL sent Individual-1 a Facebook message stating, in substance and in part, that Individual-1 could purchase "the 40 and the 380," "[b]oth with food," for "1300 for both of them," and that HALL also "can bring bullets," for which "a box is like 50 cash." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, "40" and "380" are .40 and .380 caliber firearms, respectively, and "food" is ammunition. HALL also attached a photograph, which is depicted below, stating, in substance and in part, "Look I got both with food."



5.    Based on my participation in this investigation, my conversations with other law enforcement officers, including two particular officers ("Officer-1" and "Officer-2," respectively), and my review of records, I know that on or about January 9, 2020:

      a.    Individual-1 placed a recorded phone call to the phone of RICHARD HALL, a/k/a "Richard Banko," the defendant

---

Individual-1.

3

("HALL's Phone")[4], in the presence of law enforcement officers, including Officer-1 and me, and discussed, in substance and in part, the price, as well as a time and particular location in the Bronx, New York ("the Transaction Address") for the firearms transaction.

      b. Officer-1 subsequently searched Individual-1, finding no evidence of contraband, and provided Individual-1 with electronic surveillance equipment. I then provided Individual-1 with approximately $1,400 in pre-recorded buy money.

      c. Officer-2 then drove Individual-1 to the vicinity of the Transaction Address.

6. Based on my participation in this investigation and my review of screenshots of text messages sent by Individual-1 to me, which had been sent between HALL and Individual-1, I am aware that RICHARD HALL, a/k/a "Richard Banko," the defendant, and Individual-1 subsequently settled on the purchase of only the "380," or .380 caliber firearm, with hollow tip bullets, in exchange for approximately $700.

7. Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of surveillance footage from an apartment building in the vicinity of the Transaction Address, I know that, subsequently, on or about January 9, 2020, beginning at approximately 17:20 Eastern Standard Time ("EST"), the following occurred:

      a. Law enforcement officers surveilled Individual-1 using electronic surveillance equipment and Officer-1 also followed Individual-1.

      b. Surveillance video footage captured RICHARD HALL, a/k/a "Richard Banko," the defendant, in the vicinity of the Transaction Address prior to and after the transaction.

      c. Officer-1 observed an individual that Officer-1 recognized as HALL exit a vehicle ("Vehicle-1"), walk to the vicinity of the Transaction Address, hold a brief conversation with Individual-1 in the vicinity of the Transaction Address, walk into a small alcove near the Transaction Address with Individual-1, and then return to Vehicle-1, at which point Vehicle-1 departed.

---

[4] Based on my review of Individual-1's phone prior to Individual-1's deactivation, and of records obtained from Facebook, I am aware that HALL's Phone's call number is listed under a saved contact for "Richie" on Individual-1's phone, and HALL sent Individual-1 the call number associated with HALL's Phone via Facebook message.

4

8.  Based on my participation in this investigation, including my review of audio recordings from the electronic surveillance equipment provided to Individual-1 and a search of Individual-1 after the transaction described above, I know that Individual-1 provided RICHARD HALL, a/k/a "Richard Banko," the defendant, with $700 in pre-recorded buy money.

9.  Based on my participation in this investigation, I know that law enforcement officers subsequently inventoried the following items that Individual-1 purchased from RICHARD HALL, a/k/a "Richard Banko," the defendant: (i) one Diamondback Arms .380 caliber pistol with serial number ZE9588, and (ii) one magazine containing four rounds of ammunition for the above-mentioned firearm. An image of the seized items is below.



10.  Based on my review of historical cell site data for the call number associated with HALL's Phone, I have learned, in substance and in part, the following:

    a.  On or about January 8, 2020, HALL's Phone was located in the vicinity of Lenoir, North Carolina.

    b.  On or about January 9, 2020, HALL's Phone was located in the vicinity of I-95 in North East, Maryland; in the vicinity of I-95 in Newark, Delaware; and at approximately 17:17:40 and 17:24:59 EST, during the transaction described above, in the vicinity of the Transaction Address.

11.  Subsequently on or about January 9, 2020, RICHARD HALL, a/k/a "Richard Banko," the defendant, sent Individual-1 a Facebook message stating, in substance and in part, that "I got the XD shit next trip if you need it" for "800." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, "XD" is a type of firearm and "800" refers to "$800."

5

12.     Based on my involvement in this investigation, as well as my review of records, including materials obtained from Facebook, I have learned, in substance and in part that between on or about January 4, 2020, and on or about January 9, 2020, RICHARD HALL, a/k/a "Richard Banko," the defendant, sent another individual ("Individual-2") Facebook messages, which included, in substance and in part:

>   January 4, 2020:
>   HALL: I moved from the hood but I lived in bronx dale
>   HALL: I'm OT with it and come back with the yops for niggas that need em
>   Individual-2: So how I'm supposed to cop off u if u not round bro
>   HALL: If you know anybody send em my way
>   HALL: I make trips
>   Individual-2: I wanna cop
>   HALL: I come weekends
>
>   January 9, 2020:
>   HALL: I'm in the town
>   Individual-2: Wat u bring?
>   Individual-2: ??
>   HALL: 40 and a 380

Based on my participation in this investigation and my training and experience, I believe that, in the communications excerpted above, HALL and Individual-2 were discussing HALL's firearms trafficking business and a potential transaction, including the .40 and .380 caliber firearms that HALL also discussed with Individual-1, as described above.

### February 4, 2020 Firearms Purchase

13.     Based on my involvement in this investigation and my conversations with other law enforcement officers, as well as my review of records, including materials obtained from Facebook, I have learned the following, in substance and in part:

    a.     Between or about January 28, 2020 and on or about January 30, 2020, RICHARD HALL, a/k/a "Richard Banko," the defendant, sent Individual-1 Facebook messages with three photographs, which are depicted below, and HALL and Individual-1 discussed a transaction for the "380" and "9." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, "380" is a .380 caliber firearm and "9" is a 9 millimeter firearm.

6



b. On or about February 1, 2020, HALL sent Individual-1 a Facebook message that included that HALL was "driving through Virginia rn to NC just came from Ohio." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, HALL was conveying to Individual-1 that HALL was traveling to New York from out-of-state.

c. Or about February 3, 2020, HALL sent Individual-1 a Facebook message that included that HALL "got 4 straps for sale rn"; "I got a 40 for 800 a 9 for 800 a 380 for 750 and a 32 for 700"; and that HALL "made a stop on Virginia." Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, HALL was conveying to Individual-1 the prices for different firearms – $800, $800, $750, and $700, respectively, for a .40 caliber, .9 mm, .380 caliber, and .32 caliber firearm, and that a "strap" refers to a firearm.

d. Or about February 4, 2020, HALL sent Individual-1 a Facebook message that included, "I got everything rn" "[A]nd the revolver," and also sent one photograph, which is depicted below. Based on my participation in this investigation and my training and experience, I believe that, in the communications described above, "rn" refers to "right now" and HALL was conveying to Individual-1 that HALL had all of the firearms discussed. HALL subsequently confirmed that HALL and Individual-1 could meet at the Transaction Address again.

7



14. Based on my personal observations and involvement in this investigation and my discussions with another law enforcement officer ("Officer-3"), I know that on or about February 4, 2020:

    a. Individual-1 placed a recorded call to HALL's Phone in the presence of law enforcement officers, including me, during which RICHARD HALL, a/k/a "Richard Banko," the defendant, confirmed, in substance and in part, a price of "31," which based on my training, experience and participation in this investigation, means $3,100.

    b. I subsequently searched Individual-1, finding no evidence of contraband, and provided Individual-1 with electronic surveillance equipment. Officer-3 drove Individual-1 to the vicinity of the Transaction Address and provided Individual-1 with $3,100 in pre-recorded buy money.

15. Based on my personal observations and involvement in this investigation, and my discussions with Officer-1, I know that, subsequently, on or about February 4, 2020, beginning at approximately 14:48 EST:

    a. Law enforcement officers surveilled Individual-1 using electronic surveillance equipment.

    b. A vehicle ("Vehicle-2") with four individuals inside, pulled up to the vicinity of the Transaction Location; one individual ("CC-1") exited Vehicle-2; Individual-1 entered Vehicle-2; Vehicle-2 circled the block; Individual-1 then exited Vehicle-2; and CC-1 got back in Vehicle-2.

16. Based on my involvement in this investigation, I know that law enforcement officers subsequently inventoried the items that Individual-1 purchased from RICHARD HALL, a/k/a "Richard Banko," the defendant, which included: (i) one Sig Sauer .40 caliber pistol with serial number 47A037926; (ii) One Ruger .380

8

caliber pistol with serial number 380193639; (iii) one Taurus 9mm caliber pistol with serial number TMB29335; (iv) one Harrington and Richardson .32 caliber pistol with serial number AM44210; (v) multiple rounds of ammunition for the aforementioned firearms; and (vi) multiple magazines, including extended magazines. Also based on my involvement in this investigation and the aforementioned inventory conducted, I know that that Individual-1 provided RICHARD HALL with $3,100 in pre-recorded buy money in exchange for the items described above. An image of the seized items is below.



17. Based on my review of historical cell site data for the call number associated with HALL's Phone, I have learned, in substance and in part, the following:

    a. On or about January 30, 2020, HALL's Phone was located in the vicinity of Lenoir, North Carolina.

    b. On or about February 1, 2020, HALL's Phone was located in the vicinity of Boomer, North Carolina, and subsequently in the vicinity of Greenfield Township, Ohio.

    c. On or about February 3, 2020, HALL's Phone was located in the vicinity of Lenoir, North Carolina, and subsequently in the vicinity of Bracey, Virginia.

    d. On or about February 4, 2020, HALL's Phone was located in the vicinity of Elkridge, Maryland, and subsequently, at approximately 14:48:16 EST, during the transaction described above, in the vicinity of the Transaction Address.

18. Based on my comparison of a photograph of RICHARD HALL, a/k/a "Richard Banko," the defendant, maintained on a law enforcement database, with photographs from HALL's Facebook Account, law enforcement officer observations of HALL during the

9

January 9, 2020 transaction, my review of the January 9, 2020 and February 4, 2020 audio recordings, my review of Facebook messages and texts between HALL and Individual-1, and my review of cellsite data for HALL's Phone, I believe that the individual who sold the firearms and ammunition to Individual-1 on both occasions was HALL.

WHEREFORE, deponent prays that RICHARD HALL, a/k/a "Richard Banko," the defendant, be imprisoned or bailed, as the case may be.

s/Joanna R. Beck, by the Court, with permission
_____
JOANNA R. BECK
Special Agent, ATF

Sworn to me through the transmission of this
Complaint by reliable electronic means (FaceTime), pursuant to
Federal Rule of Criminal Procedure 4.1, this
2nd day of September, 2021

_____
HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK